# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGENETIX, INC., <br><br> Plaintiff, <br> vs. <br><br> GNC PARENT, LLC; GNC CORP.; GENERAL NUTRITION CENTERS, INC.; GENERAL NUTRITION CORP.; GNC HOLDINGS, INC.; and DOES 1-4,000, inclusive, <br><br> Defendants. | CASE NO. 12-CV-0089-H (RBB) <br><br> **ORDER DENYING DEFENDANTS' MOTION TO STAY LITIGATION** |

On May 29, 2012, Defendants GNC Parent, LLC, GNC Corp., General Nutrition Centers, Inc., General Nutrition Corp., and GNC Holdings, Inc. ("GNC" or "Defendants") filed a motion to stay this action pending the outcome of arbitration proceedings between Plaintiff Imagenetix, Inc. and a third party, TriPharma, LLC. (Doc. No. 15.) On July 9, 2012, Imagenetix filed a response in opposition of GNC's motion for a stay. (Doc. No. 18.) On July 16, 2012, GNC filed a reply. (Doc. No. 20.)

The Court finds this matter appropriate for resolution without oral argument, submits it on the parties' papers pursuant to the Local Rule 7.1(d)(1), and vacates the hearing scheduled for July 23, 2012. For the following reasons, the Court denies GNC's motion to stay.

///

///

**Background**

Imagenetix is a manufacturer and distributor of nutritional supplements. Imagenetix applied for a federal trademark for the name "Trisynex" on December 8, 2006, and the mark was registered to Imagenetix on July 29, 2008. (Doc. No. 1 at ¶15.)

GNC is a global retailer of nutritional products. On January 11, 2012, Imagenetix filed this suit against GNC asserting claims of trademark infringement, trademark dilution, false advertising, unfair competition, and unjust enrichment concerning the Trisynex® mark. (Doc. No. 1.) GNC admits that it uses the Trisynex® mark in connection with its Physio-Burn™ products. (Doc. No. 15-3 at 69.) GNC claims that it is entitled to use the Trisynex® mark based on a sub-license from a third party, TriPharma. (Id. at 70.)

GNC seeks to stay this litigation based on a recently filed arbitration proceeding between Imagenetix and TriPharma concerning ownership rights in the Trisynex® mark. (Doc. No. 15.) TriPharma is a distributor and marketer of nutritional supplements. TriPharma is not a party to this case.

In June of 2006, Imagenetix and TriPharma entered into several distribution agreements to allow TriPharma to distribute and market Imagenetix weight-loss products. (Doc. No. 18-3 at 5-29.) Imagenetix and TriPharma dispute whether the terms of the distribution agreements give TriPharma the right to use and license the Trisynex® mark. (Doc. No. 15-3 at 10-13.)

In June of 2010, Imagenetix initiated an arbitration proceeding before the Judicial Arbitration and Mediation Service (JAMS). (Doc. No. 18-5 at 3.) TriPharma argued that it had the right to use the Trisynex® mark. TriPharma also asserted a number of counterclaims against Imagenetix, including a counterclaim for violation of the Lanham Act. (Doc. No. 18-4 at 21-22.) On September 12, 2011, the arbitrator issued an Interim Award in favor of TriPharma's counterclaims against Imagenetix for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. (Doc. No. 18-5 at 32-33.) The arbitrator awarded TriPharma $2.1 million in compensatory damages and $250,000 in punitive damages. (Id. at 33.) The arbitrator explicitly found that Imagenetix did not violate the Lanham Act, but
///

1 the arbitrator did not determine if TriPharma had rights to use or license the Trisynex® mark. (Id. at 32.)

On October 6, 2011, TriPharma sent a letter to the arbitrator requesting clarification on whether TriPharma had the right to use the Trisynex® mark. (Doc. No. 18-6 at 2-7.) Specifically, TriPharma requested that the arbitrator "clarify in the Final Award . . . that TriPharma has the exclusive right to use the trademark name Trisynex." (Id. at 3.) In the Final Award, the arbitrator denied TriPharma's request because it "seeks more than a mere clarification of the Interim Award . . . [and] raises a substantive issue . . . The Arbitrator declines to consider making a substantive modification of the Interim Award absent re-opening the Hearing." (Doc. No. 15-2 at 79.) On March 5, 2012, the San Diego Superior Court confirmed the arbitration award. (Doc. No. 15-3 at 8.)

On April 25, 2012, TriPharma initiated a second JAMS arbitration proceeding against Imagenetix to determine whether TriPharma has rights to use the Trisynex® mark. (Doc. No. 15-3 at 10-13.) In the second arbitration TriPharma asserts that it has the exclusive right to use the Trisynex® mark based on the terms of the distribution agreements between TriPharma and Imagenetix. (Id. at 11.) The second arbitration proceeding is currently pending. Imagenetix and TriPharma have yet to schedule evidentiary hearings in the second arbitration. (Doc. No. 18-1 at 3.)

GNC's present motion seeks to stay this litigation pending the outcome of the second JAMS arbitration between Imagenetix and TriPharma. (Doc. No. 15.) GNC asserts that the second arbitration will dispositively determine whether TriPharma possessed the right to sub-license the Trisynex® mark to GNC. Imagenetix opposes GNC's motion. (Doc. No. 18.)

**I. Legal Standard for a Motion to Stay**

The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket. Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (citing CMAX Inc.

1 v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).  These interests include: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  Id.  "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  Landis, 299 U.S. at 255; see also Lockyer, 398 F.3d at 1109-1110.

**II.  Analysis**

GNC seeks an indefinite stay in this litigation until the second arbitration between Imagenetix and a third party, TriPharma, is fully and finally resolved.  (Doc. No. 20 at 3.)  After carefully considering the competing interests of GNC and Imagenetix, the Court declines to stay this action.  See Lockyer, 398 F.3d at 1110 ("Among those competing are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.") (quoting CMAX, 300 F.2d at 268).

GNC argues that Imagenetix will not suffer any damage from staying this litigation because "[m]erely waiting longer for resolution of the instant action is not itself 'damage.'" (Doc. No. 15-1 at 6.)  The Court disagrees.  GNC does not dispute that it continues to use the Trisynex® mark in connection with the sale and marketing of GNC's Physio-Burn™ products.  (Doc. No. 15-3 at 69.)  In this litigation, Imagenetix is seeking damages and an injunction to prohibit GNC from continuing its ongoing use of the Trisynex® mark.  (Doc. No. 4 at 14-16.)  Granting an indefinite stay would unduly delay Imagenetix from pursuing injunctive relief against GNC based on its continuing use of the Trisynex® mark.  See Lockyer, 398 F.3d at 1112 (denying request to stay litigation where plaintiff sought injunctive relief against ongoing and future harm).

///

///

Furthermore, the indefinite stay requested by GNC should not be granted under normal circumstances. See Dependable Highway Express, Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature."). GNC is required to make a strong showing justifying its need for an indefinite stay. See Yong v. I.N.S., 208 F.3d 1116, 1119 (9th Cir. 2000) ("If a stay is especially long or its term is indefinite, [courts] require a greater showing to justify it."). GNC acknowledges that it is not in a position to determine TriPharma's likelihood of success against Imagenetix in the second arbitration proceeding. (Doc. No. 20 at 2 n.1.) Moreover, there is no way to predict whether the second arbitration between TriPharma, who is not a party to this case, and Imagenetix will be resolved in the near future. Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 864 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time."). The first arbitration between TriPharma and Imagenetix spanned more than sixteen months and did not resolve the parties' disputed ownership of the Trisynex® mark. (Doc. No. 15-2 at 57-85.) The parties have just begun the second arbitration proceeding and it is unclear how long it will take to reach a final resolution. Lockyer, 398 F.3d at 1112. Therefore, the Court concludes that GNC should not be granted an indefinite stay because GNC has not provided a strong justification for an indefinite stay in this case. Yong, 208 F.3d at 1119.

In addition, "Landis cautions that "if there is even a fair possibility that the stay will work damage to some one else," the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" Dependable Highway, 498 F.3d at 1066 (quoting Landis, 299 U.S. at 255). GNC has not made a showing of hardship or inequity. GNC's requirement to defend itself against Imagenetix's claims in this suit does not justify staying this case. See Lockyer, 398 F.3d at 1112 ("being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis").

GNC argues that a stay in this case will promote judicial efficiency because the pending second arbitration proceeding will determine whether TriPharma had a right to sub-license the Trisynex® mark to GNC. GNC further asserts that a stay in this litigation will avoid the

potential for this Court to reach an inconsistent result as compared to the arbitration proceeding concerning ownership rights in the Trisynex® mark.

The Court concludes that the efficient administration of justice is best served by denying GNC's motion for a stay. See, e.g., Landis, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."); see also Lockyer, 398 F.3d at 1109-1110. Imagenetix and TriPharma cannot predict how long it will take for the recently initiated second arbitration proceeding to reach a resolution. Leyva, 593 F.2d at 864 ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time."). Furthermore, Imagenetix has an interest in pursuing discovery in this litigation to determine how GNC obtained the rights it claims to have in the Trisynex® mark. The Court concludes that staying this case would unduly delay Imagenetix from pursuing its claims against GNC. See Yong, 208 F.3d at 1121 (providing that a stay would unduly burden a party seeking relief because a stay would deny the party timely resolution of their claim). Accordingly, the Court denies GNC's motion to stay this litigation.

**Conclusion**

After carefully reviewing the parties' papers and arguments, the Court concludes that the facts of this case do not justify a stay. Accordingly, the Court denies GNC's motion to institute a stay in this case.

**IT IS SO ORDERED.**

DATED: July 18, 2012

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT